## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRUCE EDWARD DRAGONFLY,<br><br>Defendant. | Cause No. CR 18-30-GF-BMM<br><br><br>ORDER |

## INTRODUCTION

Defendant Bruce Edward Dragonfly ("Dragonfly") filed a motion for compassionate release on February 13, 2025. (Doc. 69.) Dragonfly's counsel filed a supplemental brief in support of Dragonfly's motion on May 15, 2025. (Doc. 75.) Dragonfly argues that the combination of his medical issues, an "unduly harsh" sentence, and post-sentencing rehabilitation constitutes extraordinary and compelling reasons for a sentence reduction to time served plus a period of home confinement. (Doc. 69 at 1-9.) The Government opposes Dragonfly's motion. (Doc. 76.) The Government argues that Dragonfly has failed to provide extraordinary and compelling reasons justifying a sentence reduction and warrants a denial of the motion. (*Id.*)

## FACTUAL BACKGROUND

The Government filed an indictment on May 4, 2018, charging Dragonfly

with one count of Coercion and Enticement in violation of 18 U.S.C. § 2422(b), two counts of Transfer of Obscene Material to a Minor in violation of 18 U.S.C. § 1470, one count of Sexual Abuse of a Minor in violation of 18 U.S.C. §§ 1153(a) and 2243(a), and one count of Distribution of a Controlled Substance to a Person Under 21 in violation of 21 U.S.C. §§841(a) and 859(a). (Doc. 50 at 4). A Superseding Information was filed on June 27, 2018, charging Dragonfly with one count of Aggravated Sexual Abuse, in violation of 18 U.S.C §§ 1153(a) and 2241(c) and one count of Distribution of a Controlled Substance to a person Under 21, in violation of 21 U.S.C §§ 841(a) and 859(a). (Doc. 50 at 5.)

Dragonfly entered a guilty plea to the two counts stipulated in the Superseding Information on July 17, 2018. (*Id.*). Dragonfly's offense level was 37 and his criminal history score placed him in category I. (Doc. 50 at 12, 14.) The Court sentenced Dragonfly on February 14, 2019,  to the custody of the Bureau of Prisons ("BOP") for 192 months on Count I, and 48 months on Count II, with the terms to run concurrently, and with credit for the 316 days served following his arrest. (Doc. 51 at 2.) Dragonfly was further sentenced to 5 years supervised release on Count I, and 6 years on Count II, with the terms to run concurrently. (*Id.* at 3.)

Dragonfly filed a motion for compassionate release in 2020 under 18 U.S.C § 3582(c)(1)(a), citing his health problems and the COVID-19 pandemic as extraordinary and compelling medical reasons for release. (Doc. 64 at 8–24.) The

Court denied Dragonfly's motion. *See* (Doc. 68.) Dragonfly has served approximately 72 months of his 192 month term of imprisonment. Dragonfly's projected release date is December 19, 2031. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed June 10, 2025). Dragonfly is incarcerated at FCI Englewood in Littleton, Colorado. *Id.*

## DISCUSSION

### I.    Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law

3

instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide that:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

. . .

(B) The defendant is—

4

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3. The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best

provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)). USSG § 1B1.13(b).

## A. Exhaustion of Remedies

Dragonfly appropriately exhausted his administrative remedies as required before filing his motion for compassionate release. Dragonfly asserts that he sent a letter to the warden at Englewood FCI requesting consideration for compassionate release on August 12, 2024. (Doc. 69 at 4.) Dragonfly submitted a copy of an informal resolution attempt which refers to this asserted letter. (Doc. 69-1 at 2.) Dragonfly asserts that he submitted a second letter to the warden at Englewood FCI requesting consideration for compassionate release on December 7, 2024. Dragonfly submitted a copy of this second letter sent to the warden at Englewood FCI. (Doc. 69-1 at 5.) The letter requests a sentence reduction and appears to have been written on December 7, 2024. (*Id.*) Warden J. F. Williams denied Dragonfly's request for compassionate release on March 11, 2025. (Doc. 75-1 at 141–142.) Dragonfly has exhausted his administrative remedies, as more than 30 days have elapsed since that letter was sent. 18 U.S.C. § 3582(c)(1)(A).

### B. Reason for Reduction

#### a. Medical Condition

Dragonfly is 62 years old. Dragonfly asserts he has unspecified glaucoma, hand and wrist pain, right hip pain, Type 2 diabetes mellitus with diabetic neuropathy, morbid obesity, lumbago with sciatica, chronic embolism and thrombosis of vein, chronic obstructive pulmonary disease, edema, hyperlipidemia, hypertension, low back pain, and unspecified osteoarthritis. (Doc. 75 at 7–8; Doc. 69 at 6.)  Dragonfly asserts that his conditions left untreated risk permanent injury or death (Doc. 69 at 6.) Dragonfly also asserts the BOP has failed to properly treat his medical problems in a timely manner (*Id.* at 6–9.)

The Government contends that Dragonfly's current medical conditions largely stem from his obesity, the treatments for which remain available in a custodial environment. (Doc. 76 at 6–7.) The Government also agrees with Warden William's assertion that none of Dragonfly's conditions are terminal or debilitating. (*Id.* at 7.) The Government further argues that the BOP is taking steps to treat Dragonfly's medical problems, as evidenced by his medical records. (*Id.* at 7.) Dragonfly's counsel states that "it appears the Bureau of Prisons is making efforts to treat Mr. Dragonfly's medical conditions," seeming to agree with the government on this matter (Doc. 75 at 10.) The Government concludes that Dragonfly has failed to establish support for a compassionate release based on his medical condition.

7

(Doc. 76 at 8.)

Dragonfly's medical conditions alone do not constitute extraordinary and compelling reasons for compassionate release. Although Dragonfly's medical conditions are concerning, it appears the BOP is assisting Dragonfly with treatment of these issues, as Dragonfly's medical records document. (Doc. 75-1 at 1–138.) Dragonfly asserts that "the prison medical staff refuses to treat his diabetes."(Doc. 69 at 6.) This claim proves false, however, as Dragonfly's medical records demonstrate his diabetes was diagnosed in 2019, and Dragonfly receives two forms of insulin, atorvastatin, metformin, and diabetes lancets and test strips to treat his diabetes. (Doc. 69-1 at 7; Doc. 75 at 8; Doc. 75-1 at 2–5.) Dragonfly additionally receives at least 5 other prescribed medications for his other health problems. (Doc. 75-1 at 2–5.)

Dragonfly further asserts that the BOP has failed to give him an MRI for his right hip "due to budgeting issues." (Doc. 69 at 6.) It is unclear whether Dragonfly has yet undergone an MRI for his hip. The BOP did order an MRI for Dragonfly's hip. Dragonfly provides no evidence that a hip MRI was denied due to budget issues. (Doc. 69-1 at 12.) Dragonfly underwent an MRI for his back in 2024, and he saw a doctor for his hip as recently as November 2024, indicating treatment for his various medical issues is ongoing. (Doc. 75-1 at 126–27, 132–34.)

Dragonfly also identifies his obesity as an issue, and asserts it cannot be

treated in custodial conditions. (Doc. 75 at 10-11.) As the Government notes, obesity is widespread among the U.S. population and can be treated in a custodial environment through diet, exercise, and medication. (Doc. 76 at 6–7.) Dragonfly fails to demonstrate that the BOP has been neglecting his medical issues.

Dragonfly further fails to show that his conditions render him unable to walk, shower, eat, or otherwise provide for himself while in custody. The Court recognizes the heightened difficulty that custody imposes on inmates in managing medical conditions. The Court finds, however, that BOP providers seem to be managing Dragonfly's conditions. The Court finds no evidence that Dragonfly's medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," USSG § 1B1.13(b)(1)(B), or "require[] long-term or specialized medical care that is not being provided." USSG § 1B1.13(b)(1)(C). Dragonfly's medical conditions do not rise to the level of extraordinary and compelling circumstances for a sentence reduction.

### b. Unduly Harsh Sentence

Dragonfly must demonstrate that extraordinary and compelling reasons support a reduction of his sentence. *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *5 n.3 (D. Utah Feb. 18, 2020). Dragonfly briefly asserts that the sentence he received is "unduly harsh" due to " . . . the more punitive conditions of his confinement during the Covid-19 pandemic . . . " (Doc. 69 at 1.)

Dragonfly does not substantiate his claim with evidence. Other prisoners faced the same circumstances during the Covid-19 pandemic, and the Court does not find imprisonment during this period an unduly harsh condition in itself.

The Court also notes that the crimes Dragonfly committed qualify for an advisory guideline imprisonment range far greater than the sentence Dragonfly received. Dragonfly pleaded guilty to aggravated sexual abuse, in violation of 18 U.S.C §§ 1153(a) and 2241(c), and distributing methamphetamine to a person under 21 years of age, in violation of 21 U.S.C. §§ 841(a) and 859(a). (Doc. 50 at 5.) Dragonfly's total offense level was 37 and his criminal history category was I. (Doc. 50 at 12, 14.) Dragonfly's offense level and criminal history resulted in an advisory guideline imprisonment term of 360 months. (*Id.* at 20.) The court imposed a sentence of 192 months incarceration for aggravated sexual abuse, and a concurrent 48 months for drug distribution. *See* (Doc. 51.) No evidence exists that Dragonfly was given an unduly harsh sentence given the severity of his crimes.

### c. Post-Sentencing Rehabilitation

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Dragonfly submitted evidence of the rehabilitative programming that he has engaged in while incarcerated. Dragonfly completed various classes aimed at successful release, including Managing Successful Parole, Re-Entry I, II, and III, Expert Job Search

Strategies, and ACE Cognitive Change, among others. (Doc. 75 at 12; Doc. 75-3 at 1-4.) The Court commends Dragonfly on his engagement and participation in such programs. The Court also notes that Dragonfly's disciplinary record while in prison has remained relatively clear. Dragonfly appears to have not had any disciplinary infractions since 2021. (Doc. 75 at 6; Doc. 75-1 at 1.) The Court commends Dragonfly on this good behavior. Dragonfly further points to support from his family and former co-worker as evidence that he will have the community support necessary to succeed upon release in avoiding drug use. (Doc. 75 at 12–13.) Dragonfly attributes much of his past offending behavior to drug use. (*Id.*)

The Court applauds Dragonfly on this post-sentencing rehabilitation and his demonstration of a support network. It nonetheless is not clear from these facts that Dragonfly would be sufficiently rehabilitated and deterred from future offending behavior were his sentence reduced. Dragonfly has served 72 months of a 192 month sentence for giving a 12-year old girl methamphetamine in exchange for oral sex. *See* (Doc. 50 at 4–10.) Such egregious offenses require greater rehabilitation than Dragonfly has demonstrated. The Court further recognizes that rehabilitation alone cannot serve as the basis for a sentence reduction under 28 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).

Dragonfly's medical circumstances, his sentence length, and his post-sentence rehabilitation fail to rise to the level of extraordinary and compelling reasons for a

significant sentence reduction, considered individually or in combination. Reducing Dragonfly's sentence to time served plus a period of home confinement as requested would diminish the seriousness of his offenses, fail to provide appropriate punishment for his conduct, undermine respect for the law, and pose a danger to the public. See 18 U.S.C. §3553(a)(2)(A)–(C). The court will impose a slight reduction in Dragonfly's sentence to recognize his positive steps towards rehabilitation during his time in custody.

## CONCLUSION

Dragonfly has not demonstrated that extraordinary and compelling reasons exist for a large sentencing reduction under 28 U.S.C. § 3582(c)(1)(A). The Court will modify slightly Dragonfly's existing sentence to a term of 186 months.

## ORDER

Accordingly, **IT IS ORDERED** that Dragonfly's motion for compassionate release (Doc. 69) is **GRANTED in part and DENIED in part.** Dragonfly's sentence shall be reduced to a period of 186 months.

DATED this 16th day of June, 2025.

Brian Morris, Chief District Judge
United States District Court